AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

*July 14, 2023*

Nathan Ochsner, Clerk of Court

|  |  |
|---|---|
| United States of America<br>v.<br><br>Timothy Carroll<br><br><br><br><br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  **3:23-MJ-0087**

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____July 9, 2023_____ in the county of _____Galveston_____ in the
___Southern___ District of ___Texas___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 2251(a) and (e) | Sexual Exploitation of Children and Attempt |
| 18 USC 2232(a) | Destruction or Removal of Property to Prevent Search or Seizure |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Laura Brunstetter, FBI Special Agent
*Printed name and title*

Sworn to telephonically.

Date:  **7/14/23**

_____
*Judge's signature*

City and state:   ~~Galveston, Texas~~   St. Louis, MO

Andrew Edison, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Laura Brunstetter, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent of the FBI.  I have been a Special Agent with the FBI since September 2004.  I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law. During my assignment with the FBI, I have participated in the execution of search warrants for documents and other evidence, including computers and electronic media, in cases involving child pornography and the sexual exploitation of children. I have also participated in the execution of search warrants for documents and evidence in cases involving complex financial crimes, drug trafficking, and gangs. I have participated in cases involving child pornography and the sexual exploitation of children in which computers are used as the means for receiving, transmitting, and storing child pornography as defined in Title 18, United States Code, Section 2256.

2.      I make this affidavit in support of a criminal complaint and arrest warrant for Timothy Carroll, born July 11, 1975, who is currently aboard the Carnival Dream cruise ship expected to dock in Galveston, Texas on July 15, 2023.

1

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show simply that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter.

4.      As detailed below, I have probable cause to believe that Timothy Carroll (hereinafter SUBJECT) has violated federal law, including 18 U.S.C. §§ 2251(a) and (e) (sexual exploitation of children and attempt) and 18 U.S.C. § 2232(a) (destruction or removal of property to prevent search or seizure).

## STATUTORY AUTHORITY

5.      As noted above, this investigation concerns alleged violations of the following:

a.      18 U.S.C. § 2251(a) prohibits any person from employing, using,[1] persuading, inducing, enticing or coercing any minor to engage in any sexually explicit conduct[2] for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, using any means or facility of interstate or foreign

---

[1] "A person who videotapes or photographs a minor clearly 'uses' the minor for the purposes of the statute." *United States v. Barry*, 634 F. App'x 407, 411 (5th Cir. 2015); *United States v. Steen*, 634 F.3d 822, 826 (videotaping a minor is "using" a minor).

[2] "Sexually explicit conduct" is defined by statute as, *inter alia*, "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). Lascivious exhibition has been defined as "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *Steen*, 634 F.3d at 828 (quoting *United States v. Grimes*, 244 F.3d 375, 381 (5th Cir. 2001)). The Fifth Circuit and this Court have found that a surreptitious recording in a bathroom of a known minor that focuses on the genitals of the minor by an individual with a demonstrated sexual interest in children constitutes a lascivious exhibition. *See United States v. McCall*, 833 F.3d 560, 564 (5th Cir. 2016); *See also United States v. Traweek*, 2015 WL 5972461 at 15, 4:13-CR-712 (S.D. Tx. 2015).

2

commerce, or in or affecting interstate or foreign commerce, by any means, including by computer.

b.      18 U.S.C. § 2251(e) states that any individual who violates or attempts or conspires to violate Section 2251 shall be imprisoned not less than 15 years nor more than 30 years.

c.      18 U.S.C. § 2232(a) prohibits the knowing destruction, damage, disposal, transfer, or other action toward some property or attempts to do so before, during, or after a search or seizure of the property by a person who was authorized to make the search or seizure. Such prohibited action must be done with the purpose of preventing or impairing the Government's lawful authority to take said property into its custody or control or continue to hold said property under its lawful custody and control.

## DEFINITIONS

6.      The following definitions apply to this Affidavit:

a.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

b.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage

3

functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

c.        The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

d.        "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

e.        "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

f.        "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

g.        "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

4

**BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE**

7.      On July 10, 2023, the FBI was informed of the attempted production of child pornography aboard the Carnival Cruise ship 'Dream' that had occurred by a passenger the evening prior.  I received and reviewed the Carnival incident report summary from Joseph Kunnummel, Chief Security Officer, Carnival Dream. The report indicated that on July 9, 2023 at approximately 10:15 p.m., after the Carnival Dream had departed from the Galveston seaport and while it was in international waters, guest Erika Carroll (hereinafter "Erika") reported that her 16-year-old minor family member (hereinafter "MV1") discovered the cell phone belonging to Timothy Carroll, the SUBJECT, on and recording in the cabin bathroom shortly after MV1 had used the toilet. MV1 immediately reported this to Erika. Both MV1 and Erika reviewed the video.  Erika observed the camera was directed at the shower and toilet area, and the video recording captured MV1 without her pants and undergarments, using the toilet.

8.      On July 9, 2023, Erika made a written statement for Carnival Security, which I reviewed. According to the statement, Erika confronted the SUBJECT about the recording, and he denied knowing the phone was recording. Erika knew this to be untrue as she observed the SUBJECT positioning the phone to point toward the shower/toilet area at the beginning of the recording. SUBJECT asked Erika to delete the video, but she refused. SUBJECT then "started to throw [Erika] around" and pinned Erika down to get the phone. In the process, SUBJECT shoved a second minor family member, MV2, into a mirror. The SUBJECT took the phone and ran from the cabin room.

9.      On July 9, 2023, the SUBJECT made a written statement for Carnival Security, which I reviewed. In his statement, SUBJECT denied knowledge of the recording on his phone,

5

stating that he had left the phone in the cabin. SUBJECT admitted to having deleted the video without watching it.

10.   Erika made a second written statement for Carnival Security, following the interview of minors MV1 and MV2. In this written statement, Erika noted that MV1 told Carnival that this was not the first time MV1 experienced inappropriate behavior by the SUBJECT. MV1 described past experiences, including SUBJECT walking into the bathroom when she was showering. SUBJECT would also ask for hugs to inappropriately touch her breasts. If MV1 declined, SUBJECT would claim MV1 was being rude. MV1 stated that she did not feel safe being alone with the SUBJECT.

11.   On July 11, 2023 and July 14, 2023, I spoke to Erika, and took her statement telephonically. Erika reiterated the above facts and advised that she has been married to the SUBJECT for ten years but has been with him for the past 13 years. Erika said it was very unlike the SUBJECT to leave his phone behind. SUBJECT never let anyone touch his phone. Erika described the video content for me. She observed the SUBJECT set the phone inside a toiletry bag on the counter and position it directly at the shower area, which included part of the toilet area. In the video, SUBJECT fixes his shirt and then the video goes dark for a few minutes. Then MV1 enters the bathroom and uses the toilet. MV1's bare hip could be seen in the video while she used the toilet. When asked about what was discussed prior to Erika and SUBJECT leaving the room that evening, Erika said the kids did not want to go out with them, as it had been a long day. Showers were not directly discussed, but it was the children's normal routine to bathe in the evenings, thus Erika believes SUBJECT knew the children would be showering when he

6

positioned his phone to surreptitiously record the shower and toilet area before MV1 went into the bathroom.

12.    Erika also reviewed MV1's messages from the SUBJECT on MV1's phone. Erika observed that the SUBJECT communicated differently with MV1 than he did with Erika or MV2. Erika described the messages from the SUBJECT to MV1 as "grooming her." In particular, Erika observed numerous messages where the SUBJECT told MV1 he loved her, which was very unlike him.  SUBJECT was never affectionate with Erika, and in the 13 years together, would never tell her he loved her. Erika did not observe any messages saying "I love you" to MV2 on MV2's electronic device. I reviewed the messages from screen captures taken by Erika, and observed that on June 14, 2023, SUBJECT asked for photos from MV1, to include a request for a selfie, noting "it has been awhile since you sent me your famous selfies." SUBJECT claimed he needed "an updated one to add" to his contacts. MV1 provided him one of her in response. Then again, on June 25, 2023, in an exchange between SUBJECT and MV1, SUBJECT sends MV1 a .gif file that reads, "I got my swimming trunks and my flippy floppies." MV1 responds with a photo of the neighborhood pool, saying, "We just got to the pool lol are you psychic or something?" SUBJECT responds, saying, "I am send me pictures." MV1 sent SUBJECT a photo of herself with wet hair.

13.    Erika told me that when Carnival security spoke to MV1, MV1 reported that SUBJECT would come into her bed and sleep beside her. SUBJECT had claimed he did not like the children to sleep with their doors closed for fire safety reasons. As a result, MV1 would keep her door open slightly, and place books behind it so that she could hear if someone came in.

14.    On July 11, 2023, I obtained and reviewed a police report made by SUBJECT's ex-wife, Jackie Lopez on June 23, 2010. In the report, Lopez advised that while she was married to

and living with the SUBJECT, SUBJECT displayed inappropriate behavior toward Lopez's minor family member, GR. The report noted that SUBJECT asked GR to shower in his bathroom, but she refused. Lopez also noted that around Halloween of 2008, SUBJECT placed his hand under GR's leg while GR was sitting his vehicle. On or about June 30, 2010, GR was interviewed by a Forensic Interviewer with a Child Advocacy Center but did not make a disclosure.

15.     Erika believes the SUBJECT's phone used to conduct the surreptitious recording is an Apple iPhone 11. Carnival Security have secured the iPhone used by SUBJECT.

16.     At my request, Erika and MV1 used their phones to re-enact how SUBJECT's phone was tucked into the toiletries bag above the sink. The focus of the recording was primarily on the shower area, with the toilet partially visible. Below are the pictures of the how SUBJECT's phone was placed and the area it captured (model's face covered for privacy purposes):



17.    CARROLL current currently works for Fort Bend ISD as a Special Education Teacher Aide at Scanlan Oaks Elementary.

## CONCLUSION

18.    Based on the foregoing, there is probable cause to believe that Timothy Carroll attempted to produce child pornography aboard the Carnival Dream cruise ship and then obstructed the investigation into this attempted production, in violation of 18 U.S.C. §§ 2251(a) and (e) (sexual exploitation of children and attempt) and 18 U.S.C. § 2232(a) (destruction or removal of property to prevent search or seizure).

Respectfully submitted,

_____

Laura Brunstetter
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me by telephone this 14th day of July 2023 and I find probable cause.

_____

Honorable Judge Andrew Edison
UNITED STATES MAGISTRATE JUDGE

9